UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOSES FLORES,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CHILI'S BAR AND GRILL and COLIN BUTTERFIELD,<br><br>　　　　　　Defendants. | No. 1:13-cv-1783 DAD-EPG<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>**OBJECTIONS DUE IN THIRTY (30) DAYS**<br><br>**(Doc. 26)** |

## I.   INTRODUCTION

Plaintiff Moses Flores ("Plaintiff"), proceeding *pro se* and *in forma pauperi*s, filed a Third Amended Complaint ("TAC") alleging he was unlawfully terminated from his employment at Chili's Bar and Grill ("Chili's") based on his race. Plaintiff has named Chili's and Colin Butterfield[1] as Defendants ("Defendants"), and alleges several causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S. C. § 2000e *et seq* ("Title VII"), as well as several violations under the Universal Declaration of Human Rights, G.A. Res. 217A, U.N. Doc. A/810 (1948) (the

---

[1] It is unclear whether Collin Butterfield is a named Defendant in the TAC because he is not specifically listed in the caption. However, Defendant Butterfield was named in the first complaint, and the body of the TAC contains numerous allegations against him. Therefore, the Court will address claims brought against this Defendant.

"Declaration"). (Doc. 26).

The Court has screened the TAC and recommends that Plaintiff's claims for a violation of Title VII based on race discrimination proceed against Defendant Chili's, but that all claims against Colin Butterfield be dismissed. Additionally, the Court recommends that Plaintiff's claims under the Declaration be dismissed for failure to state a claim.

## II. DISCUSSION

### A. Screening Standard

Pursuant to 28 U.S.C. § 1915(e), the Court must conduct an initial review of Plaintiff's complaint for legal sufficiency.  The Court must dismiss a complaint, or portion thereof, if it determines that the action is legally "frivolous or malicious;" "fails to state a claim upon which relief may be granted;" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).  If a complaint fails to state a valid claim, the Court may grant leave to amend to the extent the deficiencies may be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Two Supreme Court cases, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 566 U.S.662 (2009), set forth a "plausibility" standard which a complaint must meet to sufficiently state a claim.  While not a probability requirement, *Twombly* and *Iqbal's* plausibility standard requires that a complaint contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 566 U.S. at 678.  Rather than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555 and 570.  In assessing the plausibility of a claim to relief, well-pleaded factual content is accepted as true.  Legal conclusions couched as factual allegations are not, however, entitled to an assumption of truth. *Iqbal*, 566 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not accepted as true).  In sum, after *Twombly* and *Iqbal*, a complaint cannot simply allege the plaintiff's entitlement to relief; rather, it has to demonstrate the plausibility of any claimed entitlement with relevant facts.

The Court notes that the pleadings of *pro se* plaintiffs "must be held to less stringent

2

standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*). Accordingly, *pro se* pleadings are construed liberally, with plaintiffs afforded the benefit of any doubt. *Id*.

As a preliminary matter, Plaintiff has been given leave to amend his complaint on two prior occasions, and he was advised that the complaint needed to contain a short plain statement of his claims pursuant to Fed. R. Civ. P. 8(a)(2). (Docs. 1,7, 20, 26, and 28). Despite these directives, much of the TAC is a long narrative outlining various events that occurred while Plaintiff worked at Chili's. Although Plaintiff contends that several of these incidents are indicative of Defendants' discriminatory acts, many of the facts relate to other employees and/or or do not constitute discriminatory conduct under Title VII because they are not based on race. Therefore, the Court's summary and analysis of Plaintiff's TAC focuses only on the allegations that can serve as a basis for stating a claim against the Defendants. Facts not mentioned in this order have been deemed not to be relevant for purposes of stating a claim under Title VII.

**B. <u>Summary of Plaintiff's Allegations</u>**

In the TAC, Plaintiff is alleging unlawful termination as a line cook from his job at Chili's in Hanford, California in May 2012 because he is Hispanic.[2] Specifically, Plaintiff asserts that his supervisor Collin Butterfield, created a hostile work environment and engaged in discrimination against him by yelling and swearing at him; falsely accusing him of falling behind on his work; criticizing him for being disrespectful while white employees were not reprimanded for the same behaviors; failing to give him shifts that were given to white employees; denying his request for a raise when raises were given to white employees; wrongfully terminating him from his position after lying about Plaintiff's alleged violent outburst; failing to timely pay him his final wages; and advising the unemployment insurance office that Plaintiff voluntarily quit when he was in fact fired. (Doc. 34, pgs. 4-5, 10, 13, 17).

Plaintiff also contends the was retaliated against because he was fired shortly after he sent

---

[2] Plaintiff also asserts discrimination based on his prior criminal history, however, this is not a protected class under Title VII as explained in section C 2(b) of this order. (Doc. 34, pgs. 7-8, 11).

3

a letter to management stating that he was not getting enough shifts because of discrimination against him. (Doc. 34, pgs. 11-12, 31).  Plaintiff contends that he has been enrolled in culinary arts programs, that he has worked in the food industry for fourteen years, and that he is qualified for his position as a line cook.  (Doc.34, pg. 9).  He contends that his termination was not based on his poor performance or lack of qualifications, but was based on race.

As a result of the above, Plaintiff alleges causes of action under Title VII for a hostile work environment, and discrimination based on wrongful termination, retaliation, and constructive discharge.  Plaintiff also alleges a cause of action for violations of articles 1(a), 23(b), and 25(c) of the Universal Declaration of Human Rights. (Doc. 34, pgs. 3,11,14 and 16).

Plaintiff seeks compensatory, nominal, general, statutory, special, and punitive damages. As part of this remedy, he is seeking lost wages, vacation and bonus pay, reinstatement of employment with the company with the intention of acquiring a management position, and any other just relief the Court deems appropriate. (Doc. 34, pgs. 17-22).

**C. <u>Analysis</u>**

*1. Rule 8*

As noted above, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 566 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Iqbal,* 566 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Facial plausibility demands more than the mere possibility that a defendant committed misconduct, *Iqbal* at 579, and while factual allegations are accepted as true, legal conclusions are not. *Id*. at 678.

*2. Title VII Claims*

*a. Exhaustion Requirement*

As a threshold matter, Title VII has exhaustion requirements that must be met prior to filing a court action. 42 U.S.C.§ 2000(e) *et seq.* A person seeking relief under Title VII must first

4

file a charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unlawful employment practice, or, if the person initially instituted proceedings with the state or local administrative agency, within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). If the EEOC does not bring suit based on the charge, the EEOC will issue a "right to sue letter." 42 U.S.C. § 2000e-5(f)(1). Once a person receives this letter, he has 90 days to file suit. 42 U.S.C. § 2000e-5(f)(1).

Plaintiff alleges he has exhausted the requisite administrative remedies, and although not all of the supporting paperwork is attached to the TAC, it appears from attachments to his initial complaint, that Plaintiff filed a complaint with the EEOC and received a right to sue letter. (Doc. 43, pgs. 2-3, 35, 36 and Doc. 1, pgs. 10-13). Therefore, the exhaustion requirements are sufficiently satisfied for purposes of screening the complaint.

### b. Discrimination/Disparate Treatment

Title VII provides that it shall be an unlawful employment practice for an employer to fail to refuse, or otherwise discriminate against, any individual because of his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(b). To establish a prima facie case of intentional discrimination (known as "disparate treatment") under Title VII, Plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co*., 358 F.3d 599, 603 (9th Cir. 2004); *see also Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1195-96 (9th Cir. 2003) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). An adverse employment action is broadly defined *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (collecting cases), and exists where an employer's action negatively affects an employee's compensation. *See*, *Little v. Windermere Relocation, Inc*., 301 F.3d 958, 970 (9th Cir. 2002) (holding that a reduction in base monthly pay was an adverse employment action even though with commission and bonuses it might have equaled the same net pay); *University of Hawaii Prof'l Assembly v. Cayetano*, 183

F.3d 1096, 1105-06 (9th Cir. 1999) (holding that receiving pay even a couple of days late can seriously affect an employee's financial situation and constitutes substantial impairment under the Contracts Clause).

Courts employ a burden-shifting analysis for Title VII disparate treatment claims. The Plaintiff must first establish a prima facie case of discrimination. If the Plaintiff succeeds in doing so, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the Plaintiff to show that the employer's reason is a pretext for discrimination. *Vasquez v. County of L.A.*, 349 F. 3d 634, 640 (9th Cir. 2004).

Here, Plaintiff alleges that he was treated differently from white employees because he is Hispanic. He contends he was qualified for his position and he was performing his job duties satisfactorily. Despite this, he asserts that he was wrongfully criticized for falling behind on his work and was falsely accused of being disrespectful while white employees were not reprimanded for the same behaviors. Plaintiff contends he suffered adverse employment actions including wrongful termination from his employment, being denied a raise when raises were given to white employees, being deprived of the same shifts given to white employees. Therefore, Plaintiff has stated a claim for intentional discrimination/disparate treatment, as well for as wrongful termination under Title VII.

      *c. Retaliation*

Title VII prohibits adverse employment actions against an employee who has "opposed any practice made an unlawful employment practice by this subchapter [ (Title VII) ]" or who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3. The analysis of a retaliation case is similar to that of a discrimination case under Title VII, where the plaintiff must establish a prima facie case of retaliation, then the employer must articulate a legitimate, non-retaliatory reason for its action, and the plaintiff must show that the employer's reason is a pretext. *See Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003).

To state a claim for retaliation, Plaintiff must establish: (1) that he engaged in a protected

activity under Title VII; (2) that the employer subjected the plaintiff to an adverse employment action; and (3) that a causal link exists between the protected activity and the employer's action. *Westendorf v. W. Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 422 (9th Cir. 2013); *Villiarimo v. Aloha Is. Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir.1994); *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir.1987). Causation "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d at 1376.

Here, Plaintiff contends that approximately four months before he was fired, he sent an email to his manager complaining that he thought he was being denied shifts and discriminated against because of his race. (Doc. 34, pgs. 11-13, 31-32). Making informal complaints to a supervisor for their alleged violation of Title VII is a protected activity. *Ray v. Henderson*, 217 F.3d at 1240 n. 3. Accordingly, Plaintiff has stated a claim for retaliation under Title VII.

### d. Hostile Work Environment

To establish a prima facie case for a hostile-work environment claim, Plaintiff must establish that: (1) the defendants subjected the plaintiff to verbal or physical conduct based on his race [or one of the other protected classes]; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and created an abusive working environment. *Surrell v. California Water Service Co.*, 518 F. 3d 1097, 1108 (9th Cir. 2008) *citing Manatt v. Bank of America, NA*, 339 F.3d 792, 798 (9th Cir. 2003).

Here, Plaintiff alleges that Defendant swore and yelled at him for falling behind on his work on several occasions. He also alleges that this was done because he was Hispanic and that white employees were not treated in the same manner. Therefore, Plaintiff has stated a claim for a hostile work environment under Title VII.

///

///

### e. Constructive Discharge

Federal case law describes constructive discharge as "an employee's reasonable decision to resign because of unendurable working conditions." *Penn. State Police v. Suders*, 124 S.Ct. 2342, 2354 (2004). More specifically, a constructive discharge occurs when, looking at the totality of circumstances, "a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987); *Satterwhite v. Smith,* 744 F.2d 1380, 1381 (9th Cir.1984); *Nolan v. Cleland,* 686 F.2d 806, 812 (9th Cir. 1982). This test is an objective standard; the plaintiff need not show that the employer subjectively intended to force the employee to resign. *See Satterwhite,* 744 F.2d at 1383; *Nolan,* 686 F.2d at 814 n. 17.

Here, Plaintiff does not allege that he was forced to resign. Instead, Plaintiff alleges that he was fired. Therefore, Plaintiff is unable to state a claim using this theory under Title VII and the Court will recommend that this cause of action be dismissed.

### f. Defendant Butterfield

It appears that Plaintiff is attempting to name Colin Butterfield, Plaintiff's direct supervisor, as a Defendant in this case. However, the Ninth Circuit has consistently held that non-employer individuals cannot be held personally liable under Title VII. *Holly D. v. California Institute of Technology*, 339 F.3d 1158, 1179 (9th Cir.2003) (affirming the district court's grant of summary judgment in favor of an individual defendant because "[w]e have consistently held that Title VII does not provide a cause of action for damages against supervisors or fellow employees"); *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998) ("[C]ivil liability for employment discrimination does not extend to individual agents of the employer who committed the violations, even if that agent is a supervisory employee."); *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993) (Individual defendants cannot be held liable for damages under Title VII even if those defendants were supervisory personnel.) Therefore, the Court will recommend that Defendant Butterfield be dismissed from all Title VII causes of action.

///

### 3. *Universal Declaration of Human Rights*

The United States Supreme Court has found that "the Declaration does not of its own force impose obligations as a matter of international law." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004). The Universal Declaration of Human Rights is a "non-binding resolution[ ] of the General Assembly of the United Nations." *Siderman de Blake v. Republic of Arg.*, 965 F.2d 699, 719 (9th Cir.1992) (explaining that the resolution "creates legal obligations only insofar as it represents evidence of customary international law"). Therefore, the Universal Declaration of Human Rights "cannot by itself support creation of a cause of action." *Sosa*, 542 U.S. at 734. Since this international instrument does not create a cause of action, Plaintiff's claims under the Declaration fails to state a claim upon which relief may be granted, and the Court will recommend that this cause of action be dismissed. *UMG Recordings, Inc. v. Shelter Capital Partners*, LLC, 718 F.3d 1006, 1014 (9th Cir. 2013) ("dismissal can be based on lack of cognizable legal theory").

### III.   CONCLUSION & RECOMMENDATION

For the reasons set forth above, Plaintiff's TAC states a cognizable claim against Chili's under Title VII for discrimination based on theories of disparate treatment, a hostile work environment, and retaliation including wrongful termination. However, Plaintiff has failed to state a claim under Title VII based on a theory of constructive discharge, or any claims against Defendant Butterfield. Similarly, Plaintiff has failed to state a claim under the Universal Declaration of Human Rights. Plaintiff has been given leave to amend his pleading on two previous occasions but he failed to remedy the deficiencies in these claims, and any future attempts to amend the complaint would be futile. Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's TAC on Plaintiff's Title VII discrimination claims based on disparate treatment, a hostile work environment, and retaliation including wrongful termination against Defendant Chili's (Doc. 34);
2. Plaintiff's Title VII claims based on a theory of constructive discharge be dismissed with prejudice;

3. Plaintiff's claims under the Universal Declaration of Human Rights be dismissed with prejudice;

4. Defendant Butterfield be dismissed from this action with prejudice based on Plaintiff's failure to state any cognizable claims against this Defendant.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 3, 2016**                    /s/ Erica P. Grosjean
                                         UNITED STATES MAGISTRATE JUDGE